**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KEITH HERMAN**, on behalf of himself and those similarly situated, | * | Case No. 3:22-cv-01476-JJH |
| | * | |
| Plaintiff, | | Judge Jeffrey J. Helmick |
| v. | * | |
| | | |
| **METALTEK INTERNATIONAL, INC.,** | * | |
| | * | |
| Defendant. | | |
| | * | |

## I.  INTRODUCTION

Named Plaintiff Keith Herman ("Herman," "Named Plaintiff," or "Representative Plaintiff"), on behalf of himself and those similarly situated, and Defendant MetalTek International, Inc. ("Defendant" or "MetalTek"), by and through undersigned counsel, hereby move the Court for entry of an order (1) preliminarily approving a class action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (2) preliminarily certifying Named Plaintiff's claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code §§ 4111.01, *et seq.*, 4111.08; and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (OMFWSA and the OPPA will be referred to collectively as "the Ohio Acts"), as a settlement class under Fed. R. Civ. P. 23; (3) appointing Representative Plaintiff's counsel as class counsel pursuant to Fed. R. Civ. P. 23(g); (4) appointing Analytics Consulting, LLC as the claims administrator ("Claims Administrator"); (5) approving the form, content, and manner of notice to the proposed settlement class; and (6) scheduling a final approval hearing.

In support of this Motion, Representative Plaintiff and Defendant submit the following exhibits:

**Exhibit 1:**    Class Action Settlement Agreement and Release and exhibits.

**Exhibit 2:**    Declaration Daniel I. Bryant.

**Exhibit 3:**    Proposed Preliminary Order Approving Class Action Settlement Agreement.

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit 3** and:

- Certify the following class under Rule 23:    "All hourly, non-exempt manufacturing/production employees (1) who were employed by Defendant at its Sandusky, Ohio facility during the time period of August 17, 2020 through May 8, 2023; (2) worked forty (40) or more hours in one or more workweeks during the Calculation Period; and (3) whose payroll and time clock data was included in the Settlement (the "Class Members")";

- Preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the service payment to Representative Plaintiff;

- Designate Daniel I. Bryant and Matthew B. Bryant of Bryant Legal, LLC and Matthew J.P. Coffman of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

## II.    PROCEDURAL BACKGROUND

### A.    Named Plaintiff's Allegations and Defendant's Response

On August 17, 2022, Herman filed a lawsuit, styled as *Keith Herman, et al.*, *v. MetalTek International, Inc.*, Case No. 3:22-cv-01476-JJH, in the United States District Court for the Northern District of Ohio, Western Division at Toledo, Ohio ("Action"). In the Action, Representative Plaintiff asserted, on behalf of himself and others allegedly similarly situated to

him, a variety of unpaid wages claims against MetalTek under the FLSA and the Ohio Acts. (Exhibit 1, Agreement, ¶ 1) In particular, Representative Plaintiff alleged that MetalTek failed to pay him, and other similarly situated production/manufacturing employees for all hours worked because (1) Representative Plaintiff and others performed integral and indispensable job duties while clocked in; and, despite being clocked in, (2) Defendant's rounding policy/practice rounded down compensable hours in a non-neutral manner to Defendant's benefit resulting in unpaid overtime compensation during workweeks when Representative Plaintiff and others worked forty (40) or more hours in one or more workweeks. (*See* ECF No. 1, Complaint, at PAGEID # 6–9; Ex. 2, Agreement, ¶ 2). Representative Plaintiff claimed that this failure resulted in unpaid wages in violation of the FLSA and the Ohio Acts during workweeks when he and other production/manufacturing employees worked forty (40) or more hours. (*Id.*)

Defendant denies that it has violated any statute, including but not limited to the FLSA, and/or the Ohio Acts. (*Id.*) Defendant further denies that Plaintiff or any other employee performed any work for which they were not fully and properly paid and denies that it liable to Plaintiff or any other employee for any reason including the reasons alleged in the Action. (*Id.*)

### B.     Arm's-Length Negotiations of the Settlement

Although there was disagreement, the Parties engaged in comprehensive communication regarding the allegations contained in the Complaint, Defendant's defenses, and agreed to conduct a due diligence exchange of relevant information, including payroll and time records. (Ex. 1, Agreement, ¶¶ 3-13) In the meantime, the Parties agreed to extend Defendant's Answer deadline multiple times while the Parties continued their investigations. (*Id.*) Thereafter, in order to avoid the burden, expense, risks, disruption, and uncertainty of protracted collective action litigation, the Parties engaged in substantial efforts to resolve the claims of the Representative Plaintiff and the

similarly situated production/manufacturing employees at the Sandusky, Ohio facility located at 510 West Water Street, Sandusky, Ohio 44870 (the "Sandusky Plant"). (*Id.*) To prepare for these efforts, MetalTek produced the time and payroll records for the Representative Plaintiff and fifty-six (56) additional production/manufacturing employees at the Sandusky Plant. (*Id.*) The Parties prepared their own damages model using this information. (*Id.*)

The Parties worked diligently to reach a resolution. As part of those efforts, Representative Plaintiff retained an analyst to construct a damages analysis and presented a comprehensive settlement demand on January 20, 2023. (Ex. 1, Agreement, ¶¶ 3-13) The Parties continued exchanging their respective factual and legal positions on the allegations contained in the Complaint and continue to have bona fide disputes. (*Id.*) Despite those differences, the Parties were able to reach an agreement on March 23, 2023, and this agreement was revised slightly on May 5, 2023. (*Id.*; *see* ECF No. 7) On May 8, 2023, the Parties reached an agreement on the terms of a resolution of this matter. (*See, e.g.* Ex. 1) The terms agreed to by the Parties are set forth in the Class Action Settlement Agreement and Release that is currently presented to this Court for preliminary approval in the attached **Exhibit 1**. Including Representative Plaintiff, the total class size includes fifty-seven (57) production/manufacturing employees at the Sandusky, Ohio plant for the period from August 17, 2020 through May 8, 2023. (Ex. 1, Agreement, ¶¶ 14 and 21)

**C.    Summary of the Key Settlement Terms.**

The Total Settlement Amount to be placed on a Global Settlement Fund for distribution is $142,900.35, which includes:  (1) all alleged unpaid overtime compensation to Named Plaintiff and the Class Members; (2) a service award of $5,000 to the Named Plaintiff; (3) Representative Plaintiff's counsel's attorneys' fees, which is equivalent to one-third (1/3) of the Global Settlement Fund, or $47,633.45; (4) costs associated with prosecuting this matter to Plaintiff's Counsel in the

approximate amount of $2,528.75; and (5) costs associated with administering the settlement to the Claim Administrator in the amount of $5,000.00. (Ex. 1, Agreement, ¶¶ 14, 18, 21, 32, 34, and 42) The Parties selected Analytics Consulting, LLC as the Claims Administrator to administer the settlement. (*Id*.)

The Parties agree and submit that the terms and conditions of the settlement are fair, reasonable, and are in the best interest of the Parties and the Class. (*See* Ex. 1, Agreement, ¶¶ 11, 34) The Parties have entered into the Agreement because it reflects a reasonable compromise of their disputed issues and any actual or potential claims. (*Id*., ¶ 8-11) If approved, the Agreement will provide Named Plaintiff and the Class with significant monetary consideration without the risk that they will recover nothing in this action or that any verdict will be overturned on motion or appeal by Defendant. (*Id*., ¶¶ 32, 46) In particular, and as described more fully below and in the Agreement and in the proposed notice to the putative Rule 23 class members, the settlement will compensate all Class Members for the damages Named Plaintiff alleges incurred for alleged overtime work they performed without full compensation for the period from August 17, 2020, through May 8, 2023 ("Calculation Period"). (*Id*., ¶¶ 14 and 21) This guaranteed compensation is especially significant considering Defendant's potential defenses, whether it acted in good faith, and the potential that the Court could ultimately deny class certification in this matter. (*Id*., ¶¶ 3, 14, 35, and 46)

Within fourteen (14) days after entry of preliminary approval, Defendant will provide last known addresses for Named Plaintiff and the Class Members to the Claims Administrator. Within 14 days thereafter, the Claims Administrator will send by First Class U.S. mail the Notice of Class Action Settlement attached as Exhibit A to the Agreement will be distributed to the Class Members providing them with an opportunity to do nothing and receive their individual settlement award,

opt out, or object to the Settlement. Class Members will have 60 days to opt-out or object to the Settlement. The Class Members will have until ten (10) days prior to the fairness hearing to submit any objections or opt out of the settlement. Five (5) days prior to the fairness hearing, the Parties will file a motion for final approval. For any Class Member who does not opt out and the Court enters an Order granting final approval, he or she will receive an Update Regarding Class Action Settlement (Exhibit B to the Agreement), which will include the individual settlement award (Ex. 1, Agreement, ¶¶ 38-39)

Class Members that do not exclude themselves will receive individual settlement payments that, according to Class Counsel, represent over 100% of their maximum amount of unpaid overtime damages that Class Members could recover in the Lawsuit and provides more than substantial relief to the Class Members during the Calculation Period of August 17, 2020 to May 8, 2023 and an amount equal to it in the form of alleged liquidated damages. (Ex. 1, Agreement, ¶ 32) Any individual who opts out will not receive any compensation and anyone who objects risks not receiving any compensation. (*Id.*) Out of the 57 Class Members, four (4) Class Members consisting of Andre Dietrich, Brandon Guerriero, George Hakes, and Steven Wilson did not work over forty (40) hours in one or more workweeks during the Calculation Period will still receive a minimum payment of Twenty-Five Dollars and Zero Cents ($25) even though they do not have any damages. (*Id.*, ¶ 21) The Parties respectfully submit that the terms of the Settlement provide substantial relief to the Class Members beyond what they might expect to receive at trial, but without the risk, time, and expense associated with such a trial. (*Id.*, ¶ 32(b); Exhibit 2, Declaration[1] of Daniel I. Bryant, ¶¶ 18-22)

---

[1] Hereinafter "Bryant, Decl."

Representative Plaintiff will be paid a service award in the amount of $5,000.00. Under the terms of the Settlement, Class Counsel will be paid one-third (1/3) of the Global Settlement Fund, or $47,633.45, for their attorneys' fees and will be reimbursed for their litigation expenses estimated to be approximately $2,528.75. Lastly, the cost of settlement administration – which is estimated to be $5,000.00 will be paid out of the total settlement amount to Analytics Consulting, LLC, which the Parties selected to administer the settlement. (Ex. 1, Agreement, ¶¶ 14, 18, 21, 32, 34, and 42; Ex. 2, Bryant Decl., ¶ 18-20)

The Parties agree and submit that the terms and conditions of the settlement are fair, reasonable, and are in the best interest of the Parties and the Class. (*See* Ex. 1, Agreement, ¶¶ 11, 34) The Parties have entered into the Agreement because it reflects a reasonable compromise of their disputed issues and any actual or potential claims. (*Id.*, ¶ 8-11) Given the substantial monetary relief recovered on behalf of the Class Members, the requests to pay the Service Award, Class Counsel's fees and litigation expenses, and cost of settlement administration are all reasonable as more fully explained below. (Ex. 2, Bryant Decl., ¶ 26)

## III.  <u>PRELIMINARY APPROVAL IS APPROPRIATE IN THIS CASE.</u>

Through the Rules Enabling Act ("REA"), Congress delegated the power to prescribe the rules of practice and procedure exclusively to the United States Supreme Court. Thus, workers can pursue unpaid wage claims through a Federal Rule of Civil Procedure 23 class action. *See, e.g.*, *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 2418738, at *1–2 (S.D. Ohio June 5, 2017); *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486–87 (S.D. Ohio 2014) (certifying a Rule 23 class action for Ohio overtime claims). Although Section 4111.10(C) provides for an opt-in procedure, this case is in federal court and, as a result, Rule 23 controls pursuant to *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.* 559 U.S. 393 (2010). Numerous other

district courts have concluded the same. For example, in *Gandy v. RWLS, LLC*, the district court held that under *Shady Grove*, "the opt-in collective action requirement is not substantive in nature to the rights and remedies created by the [New Mexico Minimum Wage Act]" and applied Rule 23 to the employee's claims filed in federal court. 308 F. Supp. 3d 1220, 1226, 29 (D.N.M. 2018). In *Roberts v. C.R. Eng., Inc.*, the district court analyzed *Shady Grove* and permitted claims to proceed as an opt-out class under Rule 23, finding that the Utah opt-in notice requirement at issue was procedural rather than substantive. 321 F. Supp. 3d 1251, 1258–59 (D. Utah 2018). And, in *Fotchman v. Darp, Inc.*, the district court conducted a *Shady Grove* analysis to determine whether Rule 23 violated the REA by abridging a state opt-in procedure. No. 5:18-CV-5047, 2019 WL 1917245, at *2 (W.D. Ark. Apr. 30, 2019). The Court found that Rule 23 applied in federal court despite the state opt-in procedure, holding: "the Court finds that [the opt-in procedure] is procedural in nature, rather than substantive." *Id*. at *4. The district court in *Glennon v. Anheuser-Busch, Inc.* recently continued the trend after conducting a *Shady Grove* analysis by holding that "the opt-in procedure of the [Virginia Wage Payment Act] is a procedural mechanism, not part of substantive state law, and therefore application of Rule 23's opt-out mechanism does not violate the Rules Enabling Act." No. 4:21cv141, 2022 WL 18937383, at *4 (E.D. Va. Sept. 22, 2022).

The Settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23. To that end, Rule 23 provides several avenues for class certification. Under any of those avenues, Courts use a three-step procedure for approving class settlements. *Gresky v. Checker Notions Co. Inc.*, No. 3:21-CV-01203, 2022 WL 3700739, at *4 (N.D. Ohio Aug. 26, 2022) (Helmick, J.) (citing *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021)). Settlement approval consists of three steps: (1) the court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) after holding a fairness hearing, the

8

court must give its final approval of the settlement. *Id.* Currently, the Parties request that the Court preliminarily approve the Settlement under step one.

At step one, the Court must ensure that the proposed settlement class outlined in the Settlement satisfies the certification requirements of Rule 23(a) and (b)(3).[2] Then, the Court must ensure that the Settlement meets the requirements of Rule 23(e). Lastly, the Court must ensure that settlement distributions are fair, reasonable and adequate.  As discussed below, these requirements are met here.

**A.**    **The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23(a).**

In the Settlement, the Parties have agreed to the certification of the proposed settlement class:

> All manufacturing/production employees (1) who were employed by Defendant at its Sandusky, Ohio facility during the time period of August 17, 2020 through May 8, 2023; (2) worked forty (40) or more hours in one or more workweeks during the Calculation Period; (3) whose payroll and time clock data was included in the Settlement.

(Ex. 1, Agreement, ¶ 21)

The Class size, including Representative Plaintiff, is comprised of a total of fifty-seven (57) employees. (Ex. 1, Agreement, ¶ 21) Under Rule 23, a class action may be maintained if the following requirements of Rule 23(a) are met:  numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).  All four elements are satisfied here.

**1.**    **The numerosity requirement of Rule 23(a)(1) is met.**

---

[2] When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any of the three conditions set forth in Rule 23(b). The Parties are requesting that the Court certify the proposed settlement class under Rule 23(b)(3).

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (internal quotations omitted). This requirement is met upon a showing that joinder would be difficult and inconvenient. *Id.* "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Notwithstanding a class size could be certified with less, "[c]ourts routinely hold that 'a class of 40 or more members is sufficient to meet the numerosity requirement.'" *Raymond v. Avectus Healthcare Solutions*, No. 1:15cv559, 2020 WL 3470461, at *4 (S.D. Ohio Mar. 27, 2020) (quoting *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014) (internal quotations omitted)). Indeed, whenever "substantial numbers" of people are affected, this requirement is satisfied. *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 852 (6th Cir. 2013).

Numerosity is easily satisfied here because the proposed settlement class includes fifty-seven (57) individuals. *See e.g. Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (generally accepted that class of 40 or more is sufficient to meet the numerosity requirement).

### 2. The commonality requirement of Rule 23(a)(2) is met.

Commonality under Rule 23(a)(2) "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183, (*citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (internal quotations and citation omitted).

Here, the commonality requirement is satisfied because all Class Members were subject to the same allegations that Defendant failed to pay all overtime due to a non-neutral rounding policy or practice of their compensable hours that, over time, resulted in unpaid overtime. While the FLSA permits rounding to the nearest tenth or quarter of an hour and permits employers to disregard clocked time where an employee is not engaged in any "work," a rounding practice violates the FLSA when it rounds their compensable hours to the employees' detriment given the allegations that the employees here are performing uncompensated pre- and post-shift work. 29 C.F.R. § 785.48 is the federal regulation that governs the use of time clocks and reads as follows:

> (a) Differences between clock records and actual hours worked. Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.

> (b) "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48 (emphasis added).

When the Class Members' common contention is that the rounding policy/practice fails to pay them for all hours worked, the commonality requirement is met. *Rapp v. Forest City Techs., Inc.*, No. 1:20-CV-2059, 2021 WL 2982005, at *9 (N.D. Ohio July 15, 2021) (Parker, M.J.)

11

(certifying Rule 23 Class of manufacturing employees because, in part, their time was rounded down to their detriment despite under a quarter-hour rounding policy).

The Parties dispute whether Class Members were engaged in principal activities in order to trigger the continuous workday rule under *Franklin v. Kellogg Co.*, 619 F.3d 604, 618–20 (6th Cir. 2010), whether all of the time is compensable, whether the rounding policy/practice consistently and systematically rounds employees' pre-shift and post-shift compensable hours worked to the employees' detriment over time, and whether Defendant acted in good faith and was based on a reasonable belief that its actions did not violate the FLSA or applicable Ohio Acts. The Parties also dispute whether the proposed class is appropriate for certification as a FLSA collective action and under Rule 23. This policy or practice unites the members of the proposed Class. As such, whether each Class Members' overtime claims will prevail generally turns on the common question of whether they performed work for which they were not compensated.

Thus, there are common questions of law and fact satisfying the Rule 23(a)'s commonality requirement with regard to the Class.

### 3.      The typicality requirement of Rule 23(a)(3) is met.

The typicality requirement under Rule 23(a)(3) is satisfied when claims of the proposed class representative are typical of the claims of the class. *Swigart*, 288 F.R.D. at 185 (internal quotations omitted). Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and the claims are based on the same legal theory.'" *Swigart*, 288 F.R.D. at 185 (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)). The Sixth Circuit has

described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because Representative Plaintiff's and the Class Members' claims arise out of Defendant's same course of conduct – it's alleged failure to pay Representative Plaintiff and the Class Members all overtime compensation based on its alleged policy or practice of rounding their compensable hours down in a non-neutral way resulting in unpaid overtime compensation when they worked overtime in one or more workweeks.

**4.      The adequacy of representation requirement of Rule 23(a)(4) is met.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185-86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart*, 288 F.R.D. at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Both prongs of Rule 23(a)(4)'s adequacy requirement are satisfied. First, as explained above, Representative Plaintiff's claims against Defendant are based on the same alleged unlawful policies and practices that affect the Class Members. Representative Plaintiff is seeking the same relief as would the Class Members – unpaid overtime compensation. Thus, Representative Plaintiff's interests are aligned with those of the Class Members. Moreover, Representative

Plaintiff is willing and able to fulfill his duties as the class representative. He has been actively involved in the prosecution of this case and was instrumental in the Parties reaching the Settlement through his knowledge of the facts of the case, regular communications with Class Counsel, and the participation with Class Counsel in the use of a targeted exchange of relevant pay and time records that allowed the Parties to identify key facts and documents that precipitated the resolution of this case. (Ex. 2, Bryant Decl., ¶ 33).

Second, Class Counsel is qualified and able to conduct this litigation on behalf of the proposed settlement class. As this Court observed on August 26, 2022, the undersigned Class Counsel has "[e]xtensive experience representing employees in wage and hour matters[,]" including "wage-and-hour class and collective actions, and have demonstrated an "expertise in the area[.]" *Gresky*, 2022 WL 3700739, at *5-8. *See also Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *6 (N.D. Ohio Sept. 13, 2021) (Helmick, J.) (this Court opined on September 13, 2021, the Court is "familiar with the work of Attorneys Matthew Coffman and Daniel Bryant and finds that they are both experienced with wage and hour litigation, including class and collective actions…"); *McCullen v. Toledo Country Club*, No. 3:18-cv-276, ECF No. 36, PageID #300 (N.D. Ohio Feb. 14, 2020) (Knepp, M.J.) (The Court "is familiar with Plaintiff's Counsel's work in this and other wage and hour cases and finds that they have the requisite experience in complex wage and hour matters.") Collectively, Class Counsel has litigated over 100 wage and hour cases in federal courts around the country. (Ex. 2, Bryant Decl., ¶ 8, n.1) Class Counsel has actively and vigorously pursued the claims in this case. Class Counsel has committed, and will continue to commit, the resources necessary to seeing this case to its conclusion.

    **B.**    <u>**The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(3).**</u>

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) contains two requirements: predominance and superiority.

### 1. The predominance requirement of 23(b)(3) is met.

The predominance requirement examines "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Put differently, the predominance requirements is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed settlement class satisfies the Rule 23(b)(3) predominance requirement because all of the Class Members share a common set of core, predominant alleged facts and legal issues, including, (a) whether the Class Members performed principal activities prior to and beyond their scheduled shifts without compensation; (b) whether Representative Plaintiff and the Class Members worked overtime and how much overtime they worked; (c) whether Defendant was aware that the Class Members worked overtime; (d) whether Representative Plaintiff and the Class Members were denied overtime compensation as alleged in the Action; (e) whether a 2-year or 3-year lookback period applies; and (f) whether Defendant's pay policies/practices was conducted in good faith.

### 2. The superiority requirement of Rule 23(b)(3) is met.

The superiority requirement examines whether a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four factors for courts to consider: (1) the interests of the members of the class in individually controlling the prosecution

of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.  Fed. R. Civ. P. 23(b)(3).  Each factor weighs in favor of certification.

First, there is no evidence that the proposed settlement class members have any interest in maintaining this litigation in separate actions. Second, the Parties are not aware of other pending litigation against Defendant involving the proposed settlement class members.  Third, the benefits of concentrating the claims in this court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction, and many, if not all, of Defendant's witnesses are located in this district.  Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *Amchem*, 521 U.S. at 620.

Moreover, efficiency favors concentrating the claims in this Court.  A final resolution of Defendant's liability is also fair because the case deals with policies affecting large numbers of employees.  It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action. Class certification here promotes consistent results, giving Defendant the benefit of finality and repose.  Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

C. **The Notice of Class Action Settlement Meets the Requirements of Rule 23(e) and Due Process.**

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009).  The notice must be "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is also required by due process. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir. 2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974)). To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel*, 534 F.3d at 514 (6th Cir. 2008) (quoting *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Id*. (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14; *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir. 1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied*, 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77).

In the present case, the proposed Notice satisfies — and actually goes beyond — these requirements. Under the terms of the Agreement, no later than twenty-eight (28) days after the Court preliminarily approves the Agreement, the Settlement Notice will be sent to the settlement

class members by first-class mail to their last known addresses. (Ex. 1, Agreement ¶ 38) Further, if the Notice is returned to the Claims Administrator as undeliverable, it will proceed per its normal policy or practice to attempt to locate a new address through reasonable means such as the National Change of Address program certified by the United States Postal Service and other standard skip trace methods. (*Id*.). If a new address is located, the Claims Administrator shall resend the Notice by first class mail. (*Id*.). This process is reasonably calculated to apprise the settlement class members of the pendency of the settlement and afford them an opportunity to present their objections or opt out of the settlement. *See Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, ECF No. 40, PAGEID # 377-78 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) and ECF No. 41 (S.D. Ohio Mar. 12, 2019) (Watson, J.) (approving Report and Recommendation).

### D. The Settlement is Fair, Reasonable and Adequate under Rule 23(e).

Rule 23 provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under the seven-factor standard discussed below. *UAW*, 497 F.3d at 626 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla.

18

2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

The seven factors used by the Sixth Circuit to evaluate class action settlements are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 626 (6th Cir. 2007) (citing *Granada Invs., Inc.*, 962 F.2d at 1205 (6th Cir.1992); *Williams*, 720 F.2d at 922-23 (6th Cir.1983)), quoted in *Crawford*, 2008 WL 4724499 at *3.  In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . .The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. As discussed below, each of these factors supports preliminary approval here.

### 1.     No indicia of fraud or collision exists.

There was no fraud or collusion in reaching the Settlement.  "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Gresky*, 2022 WL 3700739, at *5 (N.D. Ohio Aug. 26, 2022) (quoting *Harsh*, 2021 WL 4145720, at *6). *See also White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted).  All settlement negotiations were extensive, conducted fairly, and at arm's-length, and only occurred after the exchange and rigorous analysis of the relevant case law, pay and time data, and exhaustion of the Parties' legal and factual positions.  (Ex. 2, Bryant Decl., ¶¶ 16-17); *see Gresky*, 2022 WL 3700739, at *5 (observing no fraud or collusion when settlement reached after months of analysis and considerable arms-length good-faith negotiations conducted by experienced counsel). Both Parties' Counsel, who are experienced in wage and hour class and

collective actions, support the settlement as fair and reasonable, and all certify that it was reached at arm's-length. (Ex. 2, Bryant Decl., ¶¶ 18-30)

> **2.    The complexity, expense and likely duration of continued litigation favor approval**.

Wage and hour class and collective actions, such as this one, are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them. *Gresky*, 2022 WL 3700739, at *5; *Harsh*, 2021 WL 4145720, at *5; *Satterly*, 2020 WL 6536342, at *5. *See also Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019); *Satterly v. Airstream, Inc*., No. 3:19-cv-32, 2020 WL 6536342, at *5 (S.D. Ohio Sep. 25, 2020) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.").

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted litigation. The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Ex. 1, Agreement, ¶ 5; Ex. 2, Bryant Decl., ¶¶ 27-31).

> **3.    Investigation was sufficient to allow the Parties to act intelligently.**

To confirm that the Representative Plaintiff and the Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Harsh*, 2021 WL 4145720, at *5; *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should

take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id.* (quoting *Wright*, 2018 WL 3966253, at *4). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (internal citations omitted)*; Mitchell*, 2019 WL 696941, at *4, *report and recommendation adopted*, 2019 WL 1125760; *see also Dillow*, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Defendant obtained and produced the payroll and other wage data required for the Parties to construct a damages model, retain an MA-level analyst to provide a damages calculation for the Class Members, and engage in extensive back and forth calculations between counsel for the Parties. In addition, the legal issues in this case were thoroughly researched and debated by the Parties. (Ex. 1, Agreement, ¶¶ 3-13)

### 4.  The risks of litigation and uncertainty of recovery favor approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that litigation of these types of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant denies liability, it would have raised affirmative defenses to the claims, and maintains that the Class Members are not entitled to any overtime compensation: the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

The possible recovery is also open to dispute. Even if Representative Plaintiff proves liability, the amount of recovery is uncertain and something upon which the Parties continue to disagree.  (Ex. 1, Agreement, ¶¶ 2 and 35; Ex. 2, Bryant Decl., ¶¶ 27-43)

> ### 5.    Experienced counsel's views favor approval.

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. *Gresky*, 2022 WL 3700739, at *6 (N.D. Ohio Aug. 26, 2022) (citing *Satterly*, 2020 WL 6536342, at *6; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered.")*; Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Parties' Counsel are experienced in wage-and-hour class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement Agreement. Counsel support the Settlement Agreement as fair and reasonable, and in the best interest of the Class as a whole.  (Ex. 2, Bryant Decl., ¶¶ 8-12, 42)

> ### 6.    The reaction of absent class members cannot be assessed until after notice issues.

There has not yet been an opportunity to gauge the reaction of absent Class Members as class notice has not yet been issued. The Parties are of the opinion that this factor will likely favor approval because none of the Parties, their Counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the

settlement claims process. (Ex. 1, Agreement, ¶ 39(d)) This issue can be reexamined in the motion for final approval and certification.

### 7. The public interest favors settlement.

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Harsh*, 2021 WL 4145720, at *7; *Satterly*, 202 WL 6536342, at *7; *Wright*, 2018 WL 3966253 at *5; *Mitchell*, 2019 WL 696941, at *5-6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *Kritzer*, 2012 WL 1945144 at *8; *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007). This is especially true in cases involving wage and hour claims, which, by their very nature, implicate the public interest. *Harsh*, 2021 WL 4145720, at *7. Settlement provides substantial relief to class members, avoids further litigation in a complex set of cases, and frees the Court of judicial resources. *Id*.

Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### E. The Settlement Distributions Are Fair, Reasonable and Adequate.

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Gresky*, 2022 WL 3700739, at *6. When each Class Member receives their calculated alleged damages, no lengthy analysis is necessary because this result is equitable. *Id*. Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate. *Harsh*, 2021 WL 4145720, at *7. When each class member receives their calculated damages, no lengthy analysis

is necessary because this result is equitable. *Gresky*, 2022 WL 3700739, at \*6. When a settlement establishes a pool of Settlement funds that will be divided among the Settlement Class Members on a pro rata basis based upon their calculated damages, it also ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and provides them with a proportionate share of the settlement funds. *Harsh*, 2021 WL 4145720, at \*7.

In the present case, Defendant will provide a Total Settlement Amount of $142,900.35 to cover the full and final resolution of the released claims in the Lawsuit. (Ex. 1, Agreement, ¶¶ 18, 20, and 32) The Total Settlement Amount includes (1) all individual payments to Named Plaintiff and the Class Members; (2) a modest incentive award to Named Plaintiff; (3) Named Plaintiff's Attorneys' Fees and Costs for Class Counsel; and (4) settlement administration costs.

The fairness of this Settlement is particularly true here, where, at best, Class Members who do nothing will receive their maximum potential recovery of unpaid overtime that they could have recovered at trial. At worst, Class Members can opt out of the Settlement and pursue their own lawsuit at their own cost. The settlement establishes a pool of settlement funds that will be divided among the settlement class members depending on which option he or she selects based upon their calculated alleged damages. This ensures an equitable distribution of settlement proceeds that is directly tied to the harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds. *See Gresky*, 2022 WL 3700739, at \*6.

### 1.    The individual payments are reasonable and adequate.

Depending on which option Class Members select will depict the amount of alleged unpaid overtime compensation he or she will receive. (Ex. 1, Agreement, Exhibit A) As outlined above, any individual who does nothing and does not opt out will recover over 100% of their maximum

amount of unpaid overtime damages that Class Members could recover in the Lawsuit and provides more than substantial relief to the Class Members during the Calculation Period of August 17, 2020 to May 8, 2023 and an amount equal to it in the form of alleged liquidated damages. (Ex. 1, Agreement, ¶ 32) Any individual who opts out will not receive any compensation and anyone who objects risks not receiving any compensation. (*Id.*) Moreover, the payments reflect over 100% of the Class Members' overtime damages which overwhelmingly exceeds what this Court indicated was "substantial relief" and the Sixth Circuit recently indicated was a "substantial recovery." *Harsh*, 2021 WL 4145720, at \*3-9 (describing recovery of 42% of the alleged overtime damages as an "excellent result" because it represented "substantial relief" to the impacted individuals); *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 2021 WL 129067 (6th Cir. Jan. 14, 2021) (describing 32% of alleged damages as "substantial recovery"). Further, even though four (4) Class Members consisting of Andre Dietrich, Brandon Guerriero, George Hakes, and Steven Wilson did not work over forty (40) hours in one or more workweeks during the Calculation Period and, as a result, do not have any damages, they will receive a minimum payment of Twenty-Five Dollars and Zero Cents ($25). (Ex. 1, Agreement, ¶ 21; Ex. 2, Bryant Decl., ¶¶ 21-22)

In short, if approved by the Court, the Settlement will provide substantial payments to Representative Plaintiff and the Class Members for unpaid overtime compensation, which further underscores Class Counsel's opinion that the settlement is fair and reasonable and the payments to Representative Plaintiff and the Class Members is not only adequate, but exceptional.

## 2. The service award is proper and reasonable.

The Settlement provides for a service award of $5,000 to Representative Plaintiff. Courts routinely approve service awards in class and collective action litigation, because the Sixth Circuit

declared that service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010). Courts routinely approve incentive awards to compensate named plaintiff(s) for the services provided and risks incurred during the course of the class action litigation. *Gresky*, 2022 WL 3700739, at *7.

In this Circuit, service awards are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374; *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Named Plaintiff's proposed service payment set forth in the agreement is within the range awarded by district courts in this Circuit. *See Gresky*, 2022 WL 3700739, at *7 (approving a service award in the amount of $5,000); *Satterly*, 2020 WL 6536342, at *8-9 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In

Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. 11019, at *16–17, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg*, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff).

Representative Plaintiff was a longtime employee of Defendant whose alleged damages extend well beyond the possible lookback period under the FLSA. Indeed, he was employed at the Sandusky, Ohio plant for approximately thirty-five (35) years until his departure on or about December 13, 2021. (*See* Complaint, ECF No. 1, ¶ 5) Moreover, he contributed significant time, effort, and detailed factual information to Class Counsel. Furthermore, he provided Class Counsel with information throughout the pendency of this action and his efforts played a significant role in enabling the Parties to successfully resolve this matter. In addition, Representative Plaintiff attached his named to a publicly filed lawsuit against his former employer. *Satterly*, 2020 WL 6536342, at *9 (citing *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 and *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, at *9, 2011 WL 784602 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"). As such, the time and efforts Representative Plaintiff provided supports the requested service award. (Ex. 2, Bryant Decl., ¶ 33)

### 3. The attorneys' fees and expenses to Class Counsel are proper and reasonable.

After the Court has confirmed that the terms of Settlement are fair to the Class Members, it may review the Agreement as to the provision of attorneys' fees and litigation expenses to Class Counsel. The FLSA[3] provides that a Court "shall, in addition to any judgment awarded to the

---

[3] Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h). In addition, the FLSA and the Ohio Constitution provide the

plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs

of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert.*

*denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee

provision "insure[s] effective access to the judicial process by providing attorney fees for

prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of

congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile*

*& Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing &*

*Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

"When awarding attorney's fees in a class action, a court must make sure that counsel is

fairly compensated for the amount of work done as well as for the results achieved." *Harsh*, 2021

WL 4145720, at *7; *Satterly*, 2020 WL 6536342, at *9; *Wright*, 2018 WL 3966253, at *6 (quoting

*Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Mitchell*, 2019 WL

696941, at *6, *report and recommendation adopted*, 2019 WL 1125760. Absent adequate

compensation, counsel will not be willing to undertake the risk of common fund class action

litigation. *Id*. Counsel who creates a common fund for the benefit of a class is entitled to a payment

of fees and expenses from the fund relative to the benefit achieved. *Id*.

District courts may use either percentage of the fund or lodestar method to calculate fee

awards, but the lodestar method is usually implemented in certain wage and hour cases involving

relatively small claims and therefore small amounts of damages in question and, as a result, counsel

for employees will inevitably be required to expend substantial resources and time, sometimes

accruing fees several times greater than the value of damages in the case. *Harsh*, 2021 WL

4145720 at *8. The percentage approach "more accurately reflects the results achieved." *Id*., 2021

---

right to reasonable attorneys' fees for a party who recovers unpaid wages. 29 U.S.C. § 216(b); Ohio Const., Art. II, Section 34a.

WL 4145720, at *8 (quoting *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279-80). It is appropriate in cases like this one because "it encourages early settlement, which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516–17). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour common fund cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246 at *5 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigations.*, 528 F.Supp.2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* Thus, the percentage method is preferred. *Arp. v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956 at *6 (S.D. Ohio Nov. 5, 2020); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *22, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) (Black, J.) (internal citations omitted).

In this case, the Settlement provides that Class Counsel receive one-third of the total settlement amount as payment for their attorneys' fees. This Court, and other courts in the Sixth Circuit, commonly approve one-third fee awards in FLSA collective actions because 1/3 of the settlement is a "normal fee amount in a wage and hour case." *Harsh*, 2021 WL 4145720, at *3-9 (quoting *Satterly*, 2020 WL 6536342, at *10 (quoting *Brandenburg*, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.)); *see, e.g.*, *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (finding attorneys' fees in the amount of one-third of the total settlement amount are reasonable); *Adams v. Frontier R.R. Servs., LLC*, No. 2:19-CV-808, 2020 WL 9936704, at *2 (S.D. Ohio June 15, 2020) (finding attorneys' fees in the amount

of one-third of the total settlement amount are reasonable); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-00493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) (Morrison, J.) (same); *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District.")); *Bailey v. Black Tie Mgmt. Co, LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (Sargus, J).

Class Counsel accepted this case on a contingent fee basis and advanced all litigation expenses. (Ex. 2, Bryant Decl., ¶¶ 32, 45). Despite having made investments of time and out-of-pocket expenses through-out this litigation, Class Counsel has received no compensation for this case. (*Id*.) As this Court observed, Class Counsel faced a risk of nonpayment because they undertook this litigation on a contingent basis. *Gresky*, 2022 WL 3700739, at * 10. *See Wright*, 2018 WL 3966253 at *6; *In re Cardinal Health*, 528 F. Supp. 2d at 766 ("Several courts consider the risk of non-recovery the most important factor in fee determination."); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.").

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of total settlement amount appropriately compensates Class Counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See Harsh*, 2021 WL 4145720 at *9 (the Court finds that there is a benefit to society in ensuring that claimants with smaller claims may pool their

30

claims and resources and attorneys who take on class actions cases enable this.). *See also Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017).

The Agreement also provides that Class Counsel will be reimbursed their out-of-pocket expenses. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Harsh*, 2021 WL 4145720, at *9 (quoting *Satterly*, 2020 WL 6536342, at *10). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Class Counsel incurred out-of-pocket expenses in the amount of $2,528.75. (Ex. 2, Bryant Decl., ¶¶ 18, 23, 34, 49) Because these expenses are reasonable and were incurred in the prosecution of the claims in this case, the Court should preliminarily award Class Counsel reimbursement of these costs and expenses from the settlement fund. Finally, the Court should preliminarily approve payment from the fund to Analytics Consulting, LLC in the amount of $5,000.00 for settlement administration costs.[4] (Ex. 2, Bryant Decl., ¶¶ 35, 50).

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and approval under Rule 23(e).

---

[4] Analytics Consulting specializes in class action settlements and legal notice campaigns. Class Counsel has worked extensively with Analytics Consulting on class and collective action notice and settlement administration, and Analytics Consulting has been approved as settlement administrator in cases across the country. *See, e.g., Karpik v. Huntington Bancshares Inc.,* No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *11 (S.D. Ohio Feb. 18, 2021) ("the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, with responsibility to distribute the Notices and carry out the other administrative duties specified by the Settlement Agreement"); *Watson v. Tennant Co.*, No. 2:18-cv-02462 WBS DB, 2020 U.S. Dist. LEXIS 48918, at *21 (E.D. Cal. Mar. 19, 2020) ("Analytics Consulting, LLC, is appointed as the settlement administrator"); *Surdu v. Madison Glob., LLC*, 2018 U.S. Dist. LEXIS 48356, at *18 (S.D.N.Y. Mar. 23, 2018) ("I confirm Analytics Consulting, Inc. as the claims administrator").

IV.  **CONCLUSION**

Representative Plaintiff and Defendant respectfully request that the Court enter the Proposed Preliminary Order Approving Class Action Settlement Agreement attached as **Exhibit 3** and:

- Certify the following class under Rule 23: "All hourly, non-exempt manufacturing/production employees (1) who were employed by Defendant at its Sandusky, Ohio facility during the time period of August 17, 2020 through May 8, 2023; (2) worked forty (40) or more hours in one or more workweeks during the Calculation Period; and (3) whose payroll and time clock data was included in the Settlement (the "Class Members")";

- Preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23;

- Designate Representative Plaintiff as the Class Representative;

- Preliminarily approve the service payment to Representative Plaintiff;

- Designate Daniel I. Bryant and Matthew B. Bryant of Bryant Legal, LLC and Matthew J.P. Coffman of Coffman Legal, LLC as Class Counsel;

- Preliminarily approve Class Counsel's request for attorneys' fees and litigation expenses; and

- Schedule a Fairness Hearing approximately 120 days after preliminary approval.

Respectfully submitted,

**COFFMAN LEGAL, LLC**                    **FOLEY & LARDNER LLP**

*/s/ Matthew J.P. Coffman*                 */s/ Felicia S. O'Connor (per email*
Matthew J.P. Coffman (0085586)             *authorization 5/12/23)*
Kelsie N. Hendren (100041)                 Felicia S. O'Connor*[5]
1550 Old Henderson Rd.                     Katelynn Williams (phv anticipated)
Suite #126                                 500 Woodward Avenue, Suite 2700
Columbus, Ohio 43220                       Detroit, MI 48226-3489
Telephone: (614) 949-1181                  313.234.7100 (Telephone)
Facsimile: (614) 386-9964                  313.234.2800 (Facsimile)
Email: mcoffman@mcoffmanlegal.com          foconnor@foley.com
          khendren@mcoffmanlegal.com       kmwilliams@foley.com

**BRYANT LEGAL, LLC**                      **RENDIGS, FRY, KIELY & DENNIS, LLP**

*/s/ Daniel I. Bryant*                     */s/ Brian D. Goldwater*
Daniel I. Bryant (0090859)                 James Englert (0051217)
1550 Old Henderson Road, Suite 126         Brian Goldwasser (0061926)
Columbus, Ohio 43220                       Rendigs, Fry, Kiely & Dennis, LLP
Phone: (614) 704-0546                      600 Vine Street, Suite 2650
Facsimile: (614) 573-9826                  Cincinnati, Ohio 45202
Email: dbryant@bryantlegalllc.com          Email: BGoldwasser@Rendigs.com
                                           Tel: 513 381 9270
Matthew B. Bryant (0085991)                Fax: 513 381 9206
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com          *Attorneys for Defendant*


*Attorneys for Named Plaintiff and those
similarly situated*

---

[5] Admitted Pro Hac Vice on May 8, 2023.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Daniel I. Bryant*_____

Daniel I. Bryant (0090859)

*Attorney for Plaintiff*
