UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Keith Herman, *on behalf of himself and those similarly situated*,

        Plaintiff,

v.

MetalTek International, Inc.,

        Defendant.

Case No. 3:22-cv-1476

MEMORANDUM OPINION
AND ORDER

## I.    INTRODUCTION

Before me is the parties' Joint Motion for Final Approval of a Class Action and Collective Action Settlement ("Joint Motion for Final Approval"). (Doc No. 12). On October 19, 2023, I conducted a final fairness hearing by telephone. Counsel for both parties were present on the call, but no provisional class members appeared by phone or in person. After reviewing the parties' motion and hearing no objections, I grant the motion for the reasons stated below.

## II.    BACKGROUND

On August 17, 2022, Representative Plaintiff Keith Herman filed this action on behalf of himself and others allegedly similarly situated to him, asserting a number of unpaid wage claims against Defendant MetalTek International, Inc. under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19; the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. §§ 4111.01, 4111.03, and 4111.10; and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15. (Doc. No. 1).

Specifically, Herman alleges that MetalTek violated these statutes by failing to pay him and similarly situated production/manufacturing employees at MetalTek's Sandusky, Ohio facility for all

hours worked because (1) Herman and others performed integral and indispensable job duties while clocked in; and, despite being clocked in; and (2) MetalTek's rounding policy or practice rounded compensable hours in a non-neutral manner to MetalTek's benefit resulting in unpaid overtime compensation during workweeks when Herman and others worked forty or more hours in one or more workweeks.  (*See* Doc. No. 1; Doc. No. 10-1 at 2).  Herman claimed that this failure resulted in unpaid wages in violation of the FLSA and the Ohio Acts during workweeks when he and other production/manufacturing employees worked forty or more hours.  (Doc. No. 10-1 at 2).

MetalTek denies that it has violated any statute, including but not limited to the FLSA, the OMFWSA, and the OPPA.  (*Id.*).  MetalTek further denies that Herman or any other employee performed any work for which they were not fully and properly paid and denies that it is liable to Herman or any other employee for any reason including the reasons alleged in this action.  (*Id.*).

Notwithstanding MetalTek's denial of any wrongdoing, the parties agreed to engage in settlement discussions to avoid the burden, expense, risks, disruption, and uncertainty of protracted collective action litigation.  (Doc. No. 10; Doc. No. 10-2 at 6).  After months of negotiations, the parties reached a final agreement on the terms of a resolution of the action and executed the Class Action Settlement Agreement and Release (the "Settlement Agreement") on May 8, 2023.  (Doc. No. 10-1).

Under the Settlement Agreement, Herman and fifty-six other Class Members would release any wage and hour claims that were or could have been asserted in this action in exchange for individual settlement payments.  (*Id.* at 3-4).  For fifty-three of these individuals, the amount of these individual payments would be a "proportionate share of claimed damages as calculated by" Herman's counsel.  (*Id.* at 5).  "The remaining four (4) individuals consisting of Andre Dietrich, Brandon Guerriero, George Hakes, and Steven Wilson will receive a minimum payment of Twenty-

Five Dollars and Zero Cents ($25) because their payroll and time clock data reflect that they did not work over forty (40) hours in one or more workweeks and do not have any damages." (*Id.*).

Ultimately, the Total Settlement Amount of $142,900.35 would be divided as follows: (1) all alleged unpaid overtime compensation to Herman and the Class Members, in the amount of $82,738.15; (2) a service award of $5,000 to Herman; (3) Herman's counsel's attorneys' fees, which is equivalent to one-third (1/3) of the Global Settlement Fund, or $47,633.45; (4) costs associated with prosecuting this matter to Herman's Counsel in the approximate amount of $2,528.75; and (5) costs associated with administering the settlement to the Claim Administrator in the amount of $5,000.00. (*Id.* at 3-7, 11-13).

On May 12, 2023, the parties filed a joint motion for preliminary approval of the Settlement Agreement. (Doc. No. 10). With this motion, they attached the executed Settlement Agreement, (Doc. No. 10-1), and a declaration of Herman's counsel affirming the terms set forth in the Settlement Agreement were fair, reasonable, adequate, and in the best interests of the class in light of the risk of significant delay, costs, and uncertainty associated with litigation, including MetalTek's defenses. (Doc. No. 10-2 at 7, 9-12). From their perspective, "Class Members that do not exclude themselves will receive individual settlement payments that represent over 100% of their maximum amount of unpaid overtime damages that Class Members could recover in the Action and provides more than substantial relief to the Class Members during the Calculation Period of August 17, 2020 to May 8, 2023 and an amount equal to it in the form of alleged liquidated damages." (*Id.* at 8).

After considering the parties' motion and exhibits, I granted the motion on June 20, 2023. (Doc. No. 11). In doing so, "I considered the nature of the claims, the relative strength of the parties' positions, the expense, complexity, and length of time this type of litigation typically requires, the documents exchanged and analysis performed by both sides, and the allocation of the settlement proceeds," and concluded the Settlement to be "the result of good faith, arms-length

3

negotiations conducted after counsel for both sides were able to reasonably evaluate their respective positions." (*Id.* at 3). I further concluded "on a preliminary basis that the Settlement is within the range of reasonableness, is commensurate with the claims made, and could ultimately be given final approval." (*Id.*).

> With my June 20, 2023 Order, I certified a 57-member Settlement Class, defined as:
>
> All manufacturing/production employees (1) who were employed by Defendant in its Sandusky, Ohio facility during the time period of August 17, 2020 through May 8, 2023; (2) worked forty or more hours in one or more workweeks during the Calculation Period; and (3) whose payroll and time clock data was included in the Settlement.

(*Id.* at 3). I also appointed for this Settlement Class: (1) Herman as the Class Representative; (2) Bryant Legal, LLC and Coffman Legal, LLC as Class Counsel; and (3) Analytics Consulting, LLC as Claims Administrator. (*Id.* at 2). Finally, I approved "the form, substance, and manner of distribution of the notices of class action" and ordered it be distributed accordingly. (*Id.* at 3-4).

Pursuant to the approved notice procedure, MetalTek provided Analytics with the names and last known addresses of the Class Members on or about July 5, 2023. (Doc. No. 12-1 at 3; *see also* Doc. No. 11 at 4). Analytics then cross-referenced those addresses with the United Postal Service National Change of Address database, and the Class List was updated with any new addresses that were identified from the database. (Doc. No. 12-1 at 4). On July 24, 2023, Analytics mailed the approved Notice to the Class Members. (*Id.*).

Twenty-nine Notices were returned to Analytics without a forwarding address. (*Id.*). Analytics conducted a skip-trace in an attempt to ascertain a valid address for those returned, which confirmed those addresses to be the current mailing address of all twenty-nine affected. (*Id.*). Analytics then remailed the Notice to each of those addresses, and none were returned as undeliverable. (*Id.*). Ultimately, only one Notice was returned with a forwarding address, and

4

Analytics mailed the Notice to that address. (*Id.*). There is no indication that this one remailed Notice was returned as undeliverable.

In response to the Notice, Analytics received only one request for exclusion. (*Id.*). Analytics attests that it is not aware of any objections, (*id.*), and none were made during the final fairness hearing.

### III.    ANALYSIS

District courts use the following three-step procedure for approving class settlements pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement.

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

Because I have already preliminary approved the proposed Settlement, (Doc. No. 11), I need only determine whether: (1) the Class Members were given the requisite notice; and (2) the Settlement should be given final approval.

### A.    Notice to Class Members

To satisfy due process requirements, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). "The notice should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (hereinafter, "UAW") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Vassalle v. Midland Funding, LLC*, No.

5

3:11-cv-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014) (quoting *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cit. 1981).

I previously approved the form, substance, and manner of distribution of the Notice. (Doc. No. 11 at 3-4). The parties have now represented that the Notice was distributed in the manner approved, as discussed above. (Doc. No. 12-1 at 3-4). That is, the Class Members were individually mailed the Notice of the proposed Settlement. Because no Notice was returned as undeliverable after the second mailing, I am satisfied that the Class Members were given notice of the proposed Settlement and an opportunity to object.

### B. Final Approval

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *UAW*, 497 F.3d at 631 (quoting Fed. R. Civ. P. 23(e)(2)). To do so, a district court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631. The district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

#### 1. Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quotation omitted).

When evaluating settlements, "courts are not required to reach any ultimate conclusions on

the contested issues of fact and law which underlie the merits of the dispute." *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (internal quotation marks and further citation omitted). "The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

Still, "the district court must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016). "[T]he district court cannot substitute the parties' assurances or conclusory statements for its independent analysis of the settlement terms [or] merely recite the respective arguments of the objectors and parties, and then offer up platitudes about the risks of litigation generally." *Id.* (internal quotation and marks omitted).

Herman alleges that, "[d]espite utilizing a companywide timekeeping system that tracks exactly when each hourly employee 'punches' or clocks in/out each day, [MetalTek] maintains a policy and/or practice whereby it generally only compensates its hourly production/manufacturing employees for their *scheduled shifts* (or rounds to their scheduled shifts) rather than for all of the time it suffered or permitted its employees to work." (Doc. No. 1 at 6). Because of this policy, Herman asserts that compensable hours worked by him and his fellow Class Members were not counted toward the number of hours worked, resulting in unpaid overtime.

To make out a claim of unpaid overtime in violation of the FLSA, a plaintiff must show (1) that they performed compensable labor in excess of 40 hours per week and (2) their employer failed to pay them for that time. *See Walsh v. KDE Equine, LLC*, 56 F.4th 409, 413 (6th Cir. 2022); 29 U.S.C. § 207(a)(1). If a plaintiff shows the defendant's violations were willful, they qualify for a three-year statute of limitations; otherwise, the limitations period is two years. *See McLaughlin v.*

*Richland Shoe Co.*, 486 U.S. 128, 135 (1988). In addition, the FLSA allows a plaintiff to obtain "an additional equal amount" of their unpaid wages as "liquidated damages," but not if the defendant's violations were done in "good faith." 29 U.S.C. § 216(b), 260.

Here, the first hurdle the Class Members would need to clear is showing the uncounted clocked-in time was "compensable" and therefore, should have been counted towards the number of hours worked. MetalTek contends Herman and the other Class Members "did not perform any work prior to or after their scheduled shifts." (Doc. No. 10-2 at 11). To defeat this assertion and succeed on their claim, the Class Members would each have the burden of showing the work they allegedly performed before and after their scheduled shifts while clocked in was a "principal activity" – an activity "which the employee is 'employed to perform,'" 29 C.F.R. § 790.8(a) (quoting 29 U.S.C. § 254(a)(1)), or one that is "an integral and indispensable part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956). From the face of the Complaint, it appears they seek to show those activities performed were "integral and indispensable." (*See* Doc. No. 1). As such, the Class Members would have to demonstrate that each of those allegedly "integral and indispensable" activities was "an intrinsic element of [their principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 33 (2014).

The Class Members may be able to make this fact-intensive showing, particularly after additional discovery. But both doing so presents a significant factual and legal obstacle in the face of MetalTek's challenge.

Beyond this, the parties disagree over the applicable *mens rea* for any alleged violations, which affects both the applicable statute of limitations and the Class Members' eligibility to receive liquidated damages. (Doc. No. 10-2 at 9, 11). Whether any violations were "willful" determines whether the two-year or three-year limitations period should apply. *See McLaughlin*, 486 U.S. at 135.

8

The Calculation Period for the Settlement extends from August 17, 2020 to May 8, 2023. (*See* Doc. No. 10-1). That first date extends back two years from the August 17, 2022 filing date for this case. If litigated further, the Class Members could potentially show the violations were "willful," extending the start date for the damages period back to August 17, 2019. But, on the other hand, MetalTek could show violations were done in "good faith," foreclosing the Class Members' ability to obtain any additional liquidated damages under the FLSA. 29 U.S.C. § 260.

In light of these legal and factual disputes and associated risks, I conclude the "[t]he tradeoff embodied in the settlement is fair." *Shane Grp., Inc.*, 825 F.3d at 809. As stated in the Notice, the Agreement provides that:

> Class Members who do not exclude themselves will receive individual settlement payments on a pro rata basis based on their claimed damages as calculated by Class Counsel and a Masters-level analyst. The payments were calculated by analyzing the amount of alleged unpaid time that Class Members worked over 40 hours each week based upon the time data provided by Metaltek to Class Counsel during the applicable Calculation Period of August 17, 2020 to May 8, 2023. According to the Class Counsel's calculations, Class Members will receive over 100% of the alleged unpaid overtime.
>
> For the Class Members who do not have any damages, they will receive a minimum payment of $25.

(Doc. No. 10-1 at 22).

The Sixth Circuit has referred to an unnamed class member's recovery of "32% of alleged damages, after deductions for fees and expenses" as "substantial." *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.*, 833 F. App'x 430, 431 (6th Cir. 2021). Based on this, I conclude the averred "over 100%" recovery of unpaid overtime to be reasonable and adequate for the unnamed Class Members here. While they could potentially collect more in damages, especially if the violations were deemed to be "willful," they could also collect far less or even nothing at all if they are unable to show the activities performed during the additional clocked-in time is legally recognized as "compensable." Balancing the risks of proving the additional clocked time was unpaid overtime against the benefit of

9

receiving 100% of that alleged unpaid overtime for the Calculation Period, I conclude the likelihood-of-success factor weighs in favor of approval.

### 2. Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006). Because there is no evidence here to rebut that presumption, I conclude there is no risk of fraud or collusion.

### 3. Complexity, Expense, and Likely Duration of Continued Litigation

The Sixth Circuit has acknowledged the complexity of suits combining FLSA collective actions with Rule 23 class action. *Déjà Vu Servs., Inc.*, 925 F.3d at 898. This case is no exception.

If forced to litigate this case further, the parties would engage in additional complex, costly, and protracted discovery including the further production and review of electronic and paper documents and one or more depositions. Presumably, this lengthy and expensive discovery process would be followed by dispositive motion practice. In light of the legal and factual complexities of the case, the case may not be resolved through motion practice but may proceed to trial resulting in further delay, expense, and risk. Settlement now "secures a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). Therefore, I conclude this factor weighs in favor of approval.

### 4. Amount of Discovery Engaged in by the Parties

To confirm plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the amount of discovery taken must be considered. *Id.* at 374. "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties

engaged both before and after litigation commenced." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006). "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*

Here, the parties agree they have engaged in what they deem to be ample investigation. Counsel has also represented that they have thoroughly researched the legal issues in the case, and affirmed all aspects of the dispute are well understood by both sides. (Doc. No. 10-2 at 9).

To aid in the calculation of the Settlement Amount, Defendant produced payroll and time punch records for all Class Members. Those records were then analyzed by Defendant, Class Counsel, and Class Counsel's analyst. Both parties used this data to construct damages models. Using those models, the parties engaged in negotiations and agreed to the Settlement. (*Id.* at 6-7).

Based on the parties' representations, I am satisfied that sufficient discovery has been conducted to inform the parties so that they could negotiate a fair, reasonable, and adequate settlement.

**5.      The Opinions of Class Counsel and the Class Representative**

The Sixth Circuit has advised that "[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Williams*, 720 F.2d at 922-23.

Here, Class Counsel in this case has served as "Class Counsel" in many similar collective and class actions, including several before me. *See, e.g. Gresky v. Checker Notions Co., Inc.*, No. 3:21-CV-01203, 2022 WL 3700739, at *4 (N.D. Ohio Aug. 26, 2022); *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *4 (N.D. Ohio Sept. 13, 2021); *Clark v. Miller Valentine Partners Ltd. II*, No. 1:20-CV-295, 2023 WL 5087233, at *4 (S.D. Ohio Aug. 8, 2023). Therefore, I consider them to be "experienced" and give deference to their judgment that this Settlement should be approved. (Doc. No. 10-2).

11

With regard to the Representative Plaintiff, I first note that this Settlement includes a reasonable service award to Herman in the amount of $5,000. (Doc. No. 10-1 at 7); *see, e.g.*, *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, Case No. 3:19-cv-107, 2020 WL 6536342, at *8-9 (citing *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)) (approving service awards between $10,000 and $15,000 to the named plaintiffs and recognizing that incentive awards are an "efficacious way[] of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class" as well as acknowledging the risks incurred because of representative plaintiffs' positions as the public face of the lawsuit); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (approving a $10,000 service award for each named plaintiff).

More to the point here, Herman has expressed his approval of the terms of the Settlement by executing the Agreement. (Doc. No. 10-1 at 17). Because both Herman and Class Counsel approve of the Settlement, I conclude this factor weighs in favor of approval.

### 6. The Reaction of Absent Class Members

In this case, only one of the fifty-seven Class Members asked to be excluded from the Settlement. (Doc. No. 12-1 at 4). That individual's reasoning was not provided. But the Claims Administrator did affirm she was not aware of any objections to the Settlement. (*Id.*). Though the Class Members were able to "opt-in" to the Settlement by remaining silent, the lack of objections and single request for exclusion supports a finding that the reaction of the absent class members is neutral, if not favorable.

### 7. The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007). This case is no exception to that general rule. The Settlement here compensates the Class Members for all of their unpaid overtime and conserves judicial

resources by "avoid[ing] further protracting the case through litigation of individual issues, such as the applicability of the statute of limitations to individual claimants." *Id.* Further, "enforcing the FLSA furthers an important interest in 'encouraging employees and others to ensure that employers comply with laws governing employment.'" *Déjà Vu Servs., Inc.*, 925 F.3d at 899 (quoting *Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 871 (E.D. Tenn. 2013)). The public interest weighs in favor of approving the proposed settlement.

Because the factors weigh in favor of approval, the Joint Motion for Final Approval is granted.

### C. Class Counsel Attorneys' Fees

Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In addition, the FLSA and the Ohio Constitution provide the right to reasonable attorneys' fees for a party who recovers unpaid wages. 29 U.S.C. § 216(b); Ohio Const., art. II, § 34a. "[A]wards of attorney's fees by federal courts in common fund cases" must be "reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Id.* The first step to determining those fees is to choose a method of calculation – either the lodestar method or the percentage method. The lodestar method compensates attorneys based on "hours spent and rates charged," while the percentage method compensates attorneys by providing them with a percentage of the amount in the common fund. *Id.* After making this choice, the court must assess the reasonableness of the fee. *Id.* (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

The Settlement proposes that Class Counsel receive one third of the common fund, totaling $47,633.45. (Doc. No. 10-1 at 7, 24; Doc. No. 10-2 at 8).

### 1. Choosing a method

While the lodestar approach "better accounts for the amount of work done," the percentage approach "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516. The percentage method "is easy to calculate[,] it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery[,] and it encourages early settlement." *Id.* It is particularly appropriate for FLSA wage-and-hour cases like this one because it promotes the employee-protecting objectives of the FLSA by maximizing the class members' recovery at an early stage of the case. *See Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246 at *5 (S.D. Ohio Feb. 16, 2021).

In addition, in light of the relatively small class size and relatively short life of the case, applying the lodestar method would be "too time-consuming of scarce judicial resources" because it would require the court to "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier," which would lengthen the litigation but provide little additional benefit to the parties. *Rawlings*, 9 F.3d at 517.

Therefore, the percentage method is appropriate in this case.

### 2. The reasonableness of the fee.

Six factors typically inform the analysis of whether an attorney's fee award is reasonable:

> "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Moulton*, 581 F.3d at 351 (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). Here, these factors weigh in favor of concluding the requested fee award contemplated by the Agreement

14

to be reasonable.

First, and most importantly, Class Counsel's work benefited the Class Members by ensuring they received 100% of their unpaid overtime for the Calculation Period while eliminating the risk, uncertainty, and further expense they would face if the litigation were to continue. *See, e.g., Dewald*, 2021 WL 687246, at *5; *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-cv-638, 2014 WL 497031, at *15 (S.D. Ohio Feb. 7, 2014). Given only one Class Member requested opt out of the Settlement and none objected, demonstrates Class Members recognize the Settlement's benefits, which resulted from Class Counsel's efforts. *See Hainey*, 617 F. Supp. 2d at 675.

Second, while Class Counsel introduced no evidence related to the value of their services on an hourly basis, they do assert they "took this case on a contingency basis only." (Doc. No. 10-2 at 13). By doing so, they undertook the risk of not receiving any compensation. While I cannot assess the magnitude of this risk without further information about the amount of time expended on this case, I conclude the third factor weighs slightly in favor of reasonableness. *See Michel*, 2014 WL 497031, at *16 ("The magnitude of the risk may be considered in terms of the time spent on the case.").

Third, because there is a benefit to society in ensuring claimants can join together in this collective action and proceed to settlement, the fourth factor weighs in favor of rewarding Class Counsel for their efforts in helping not just Herman, but all of the Class Members recover damages for unpaid overtime wages. *See, e.g., Dewald*, 2021 WL 687246, at *5; *cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.").

Finally, both Class Counsel and counsel for MetalTek are experienced in these wage-and-hour cases. Class Counsel is particularly experienced in settling them. *See, e.g. Gresky*, 2022 WL 3700739; *Harsh*, 2021 WL 4145720; *Clark*, 2023 WL 5087233. Here, by working cooperatively

15

through the discovery process and negotiating in good faith over the course of several months, they were able to resolve this matter efficiently and effectively. (*See* Doc. No. 10-2 at 6-7). This cuts both ways in the weighing of factors. That is, seemingly because of Class Counsel's skill and informed judgment, this case resolved relatively quickly and did not become the more "complex" action it otherwise would have been. In short, the complexity factor balances out that of attorney skill.

Ultimately, I find the factors to weigh sufficiently in favor of reasonableness to award the requested fee of one-third of the common fund, or $47,633.45. In doing so, I note that the Class Members were notified that this specific amount of attorneys' fees would be paid to Class Counsel under the Agreement, (Doc. No. 10-1 at 24), and none challenged the value of those services by objecting. (Doc. No. 12-1 at 4).

### D.    Costs and Expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Here, Class Counsel requests reimbursement for $2,528.75 in costs and expenses. (Doc. No. 10-2 at 10, 13). They submit no evidence other than their declaration, alleging the amount requested includes: "the filing fee to commence the Action, postage, and the bill associated with constructing a damages model with respect to negotiating the terms of the settlement." (*Id.* at 13).

Despite the lack of any additional evidence, I rely on the truthfulness of Class Counsel's assertion and conclude these expenses are reasonable and necessary in connection with litigating and resolving this action. Accordingly, I grant Class Counsel's request for expense reimbursement of

$2,528.75.

I also grant the parties' request that Analytics be paid $5,000.00 to be deducted from the Settlement for costs associated with administering the Settlement.

### V. Conclusion

Based on the foregoing, the parties' Joint Motion for Final Approval is granted. (Doc. No. 12). Specifically, I find as follows:

1. Pursuant to Federal Rule of Civil Procedure 23(e)(2), I conclude, after a hearing and based on the parties' submissions, that the Settlement Agreement is fair, reasonable, and adequate. In reaching this conclusion, I considered the record in its entirety and heard the arguments of counsel for the Parties. In addition, I considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class Members to the Settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the Class Members;

2. The terms and provisions of the Settlement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement will result in substantial savings of time, money, and effort to the Court and the parties and will further the interests of justice;

3. Pursuant to the Settlement Agreement and the June 20, 2023 Order granting the parties' Joint Motion for Preliminary Approval of Class Action Settlement, (Doc. No. 11), the Class is defined as "All manufacturing/production employees (1) who were employed by Defendant in its Sandusky, Ohio facility during the time period of August 17, 2020 through May 8, 2023; (2) worked forty or more hours in one or more workweeks during the Calculation Period; and (3) whose payroll and time clock data was included in the Settlement."

4. All Class Members are bound by this Judgment and the terms of the Settlement;

5. Nothing in the Settlement Agreement, this Judgment, or the fact of the Settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law; damages or lack thereof; or of the validity or invalidity of any claim or defense asserted in this action;

6. I have considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the Class Members. Herman participated in the action, acted to protect the Class Members, and assisted his counsel. The efforts of Class Counsel have produced the Settlement entered into with good faith, providing a fair, reasonable, adequate, and certain result for the Class Members. Class Counsel has

      made application for an award of $47,633.45 in attorneys' fees and $2,528.75 in expenses incurred in the prosecution of the action on behalf of itself and the Class Members. The Court finds that the amounts requested for fees and expenses to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $50,162.20 in total as attorneys' fees and expenses to Class Counsel. Analytics shall also be paid $5,000.00 for its services in administering this Settlement. Further, Representative Plaintiff is entitled to a fair, reasonable, and justified service award of $5,000 pursuant to the Settlement Agreement and to be paid from the Settlement;

7. This case is dismissed with prejudice; and

8. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the enforcement of this Judgment and the Settlement Agreement and all matters ancillary thereto.

So Ordered.

                                                  s/ Jeffrey J. Helmick
                                                  United States District Judge